UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TIMOTHY JEROME BAILEY,

        Defendant.

CRIMINAL NO. 14-270 (PJS/TNL)

**REPORT AND RECOMMENDATION**

Surya Saxena, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the Government; and

Thomas G. Dunnwald, **Dunnwald & Peterson, P.A.**, 205 Garland Building, 201 East Hennepin Avenue, Minneapolis, MN 55414, for Defendant.

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Timothy Jerome Bailey's Motion to Dismiss (ECF No. 22), Motion to Suppress Statements (ECF No. 20), and Motion to Suppress Search and Seizure (ECF No. 21). The Court held a motions hearing on September 26, 2014. (*See* ECF No. 26.) Thomas G. Dunnwald represented Bailey. Surya Saxena represented the Government. The Court heard the testimony of Officer Daniel Lawrence Irish. The Government offered and the Court received the following exhibits:

- Government Exhibit 1 is a CD containing an audio/video recording of Officer Irish's squad-car camera.

- Government Exhibit 2 is a search warrant issued by Hennepin County District Court on April 30, 2014.

- Government Exhibit 3 is a search warrant issued by Hennepin County District Court on April 1, 2014.

I.  **FACTS**

On March 25, 2014, Officer Irish was working a seatbelt enforcement detail in Brooklyn Center, Minnesota. (Mot. Hr'g Transcript, Sept. 26, 2014, at 12 (hereinafter "T. 12")). He observed a vehicle pass him with a passenger who was not wearing his seatbelt. (T. 12.) Officer Irish executed a traffic stop; the vehicle continued for about half a block, then turned right and stopped. (T. 12, 21.) When the vehicle stopped, the passenger got out of the car and ran away. (T. 12, 21.) Officer Irish began pursuing the fleeing individual, and the vehicle drove off. (T. 12, 21.)

The suspect jumped over a few fences and then ran towards the back yard of a nearby house. (T. 13.) Officer Irish stopped chasing the suspect because he knew that a K-9 unit was en route and multiple squad cars were coming to set up a perimeter. (T. 13.) Officer Irish returned to his squad car and patrolled the area looking for the suspect. (Gov't Ex. 1.) The K-9 unit arrived shortly thereafter and discovered Bailey hiding behind a detached garage by some garbage cans. (T. 13-14.)

Bailey was handcuffed, searched, and placed in the back seat of Officer Irish's squad car. (T. 14.) An audio-visual recording device recorded a view of the back seat of the squad car and a view out the windshield over the hood of the squad car. (*See* Gov't Ex. 1.) After placing Bailey in the back seat, Officer Irish asked why he ran, and the two

2

discussed "the possibility of a warrant." (T. 15; Gov't Ex. 1.) During this conversation, Bailey was sitting in the rear driver-side seat of Officer Irish's squad car while Officer Irish sat in the front seat. (Gov't Ex. 1.) Officer Irish did not read Bailey his *Miranda* rights before talking with Bailey. (T. 15.)

After several minutes of intermittent conversation, a civilian approached Officer Irish. (T. 15.) The citizen appeared to be a resident of one of the properties through which Bailey ran while he was attempting to evade Officer Irish. (T. 15-16.) The civilian told Officer Irish that he had found a gun. (T. 16.) Officer Irish got out of the squad car, closed the door behind him, and followed the civilian back to his residence to investigate. (T. 16.)

While Officer Irish was investigating the civilian tip, the recording device in his squad car continued running. (T. 17.) Immediately after Officer Irish had left his car to investigate and closed the door behind him, Bailey said, "Damn, they found that gun. Fuck. Damn. . . . *Fuck*." (*See* T. 18; Gov't Ex. 1.) Officer Irish found a loaded 9mm handgun and a black Samsung phone along the track that Bailey had run. (Gov't Ex. 3 at 4.) Shortly thereafter, Officer Irish returned to his squad car. (T. 28.) He stood in front of the squad car and unloaded the handgun so that his dashboard camera would record it. (T. 28-29.)

On April 1, 2014, law enforcement applied for and obtained a warrant from Hennepin County District Judge Gina M. Brandt to search Bailey's black Samsung flip phone. (Gov't Ex. 3.) On April 30, 2014, law enforcement applied for and obtained a

warrant from Hennepin County District Judge Bruce D. Manning for all records relating to Bailey's cell phone account. (Gov't Ex. 2.)

## II.     ANALYSIS

### A.  Motion to Dismiss

Bailey first moves to dismiss the indictment.[1] When considering a pretrial motion to dismiss an indictment, the allegations contained in the indictment should be accepted as true. *See United States v. Najarian*, 915 F. Supp. 1460, 1463 n.3 (D. Minn. 1996) (citing *inter alia*, *United States v. Sampson*, 371 U.S. 75, 78-79 (1962)). "[F]ederal criminal procedure does not 'provide for a pre-trial determination of sufficiency of the evidence." *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (quoting *United States v. Critzer*, 951 F.2d 306, 307-08 (11th Cir. 1992)). "Indictments are normally sufficient unless no reasonable construction can be said to charge the offense." *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995) (citation omitted).

The indictment charges Bailey with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The first page includes a chart setting forth four felonies, each of which occurred on a different occasion. On its face, the

---

[1] Bailey states that law enforcement's initial contact with him had no legitimate basis. (ECF No. 22.) The legal justification of an officer's seizure of a defendant usually arises in a motion to suppress rather than a pretrial motion to dismiss an indictment. Even if Bailey's argument were properly raised and supported in this case—essentially that Officer Irish had no justification to stop the vehicle Bailey was riding in or to arrest Bailey after he fled the traffic stop—the argument would fail. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."), *and United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010) (citing *Illinois v. Wardlaw*, 528 U.S. 119, 124-25 (2000)) (suspect's unprovoked flight from law enforcement can contribute to reasonable suspicion that he engaged in criminal activity).

4

indictment contains a "plain, concise, and definite written statement of the essential facts [and elements] constituting" the offense charged. Fed. R. Crim. P. 7(c)(1). Accepting all of the allegations in the indictment as true, the Government has sufficiently pleaded that Bailey violated 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Accordingly, his motion to dismiss must be denied.

### B. Motions to Suppress

Bailey also moves to suppress (1) all statements that he made on March 25, 2014, arguing that such statements were the results of custodial interrogation without first being read *Miranda* rights, and (2) fruits of the searches executed pursuant to the April 1 and April 30 warrants, arguing that probable cause did not support the warrants.

#### 1. Bailey's March 25, 2014 Statements Are Admissible

Bailey first argues that his statements made in the back of the squad car after Officer Irish ceased questioning him must be suppressed.[2] Bailey asserts that Officer Irish's actions of stepping out of the car but staying within earshot, speaking with a citizen about a gun the citizen supposedly found, and then returning and unloading a pistol in front of his squad car in full view of Bailey—all while leaving the squad car's recording device on—violated his Fifth Amendment rights. Bailey argues that these actions, following a period of custodial interrogation unaccompanied by *Miranda*

---

[2] The Government represents that the only substantive statements that it intends to use in its case-in-chief are those made after Officer Irish left to investigate the citizen's tip but before Officer Irish returned. (Gov't Mem. in Opp'n, ECF No. 25, at 7.) Accordingly, the Court will not address the admissibility of any statements that Bailey made in response to Officer Irish's direct questioning.

warnings, constituted actions that Officer Irish should reasonably have known were likely to elicit an incriminating response from Bailey.

A suspect's *Miranda* protections are triggered when he is both in custody and subject to police interrogation. *United States v. Lawrence*, 952 F.3d 1034, 1036 (8th Cir.), *cert. denied*, 503 U.S. 1011 (1992). "Interrogation" can be either "express questioning" or words or actions "that the police should know are reasonably likely to elicit an incriminating response . . . ." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Lawrence*, 952 F.2d at 1036. "A voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings." *Innis*, 446 U.S. at 299; *see also United States v. Griffin*, 922 F.2d 1343, 1356-57 (8th Cir. 1990).

Here, Officer Irish had stopped asking Bailey direct questions. He had exited his squad car and closed the door behind him in order to talk with a citizen who was offering information about an abandoned firearm that was found in the area Bailey had been running. Officer Irish left the audio-video recording device in his squad car running while he went to investigate the citizen's tip. The act of leaving the recording device activated while he investigated the citizen's tip was not the functional equivalent of express questioning. *United States v. Hernandez-Mendoza*, 600 F.3d 971, 977 (8th Cir.), *amended by United States v. Hernandez-Mendoza*, 611 F.3d 418 (8th Cir. 2010). Officers do not interrogate a suspect simply by leaving him alone and hoping that he will incriminate himself. *Arizona v. Mauro*, 481 U.S. 520, 529 (1987); *Hernandez-Mendoza*, 600 F.3d at 977. Officer Irish "had legitimate security reasons for recording the sights and sounds

within his vehicle," *Hernandez-Mendoza*, 600 F.3d at 977 (citing *Mauro*, 481 U.S. at 528), and Bailey "had no reasonable expectation of privacy in a parked patrol car, which is 'owned and operated by the state for the express purpose of ferreting out crime.'" *Id.* at 977 (quoting *United States v. Clark*, 22 F.3d 799, 801 (8th Cir. 1994)).

Moreover, suppressing Bailey's statements would not serve the interests that *Miranda* was designed to protect. *Miranda* was "designed to vest a suspect in custody with an added measure of protection against coercive police practices." *Innis*, 446 U.S. at 301. Officer Irish had closed his door and left Bailey in the squad car. Bailey's statements were not in response to any questions from Officer Irish, nor were they the result of any prompting or psychological ploy on the part of Officer Irish. The Court finds nothing coercive in leaving Bailey alone in the car while he went to investigate a reported firearm where Bailey had been running. Based on the totality of the circumstances, Bailey's statements at issue were not the product of police interrogation or any other coercive police practices, and his motion to suppress must be denied.

### 2. Probable Cause Supports the Warrants

#### a. April 1, 2014 Warrant

Bailey challenges the admission of fruits from the search of his cell phone, arguing that the supporting affidavit failed to establish probable cause. Brooklyn Park Police Officer John Blasingame's affidavit in support of the search contained, *inter alia*, the following information: the Brooklyn Park Police Department ("BPPD") responded to a 911 call reporting an armed robbery with a gun in the third floor hallway of the Huntington Place apartments at 5833 73rd Avenue North in Brooklyn Park, Minnesota.

Officers met with the robbery victim ("LWZ") who identified one of the three assailants as "TI." According to LWZ, TI wore his hair in three dreadlock braids. LWZ told police that he recognized TI from a barbeque the day before. LWZ told police that one of the assailants held him at gunpoint while TI and the third assailant searched his car in the parking lot. Officer Blasingame reviewed the surveillance footage of the Huntington Place parking lot and observed the following: (1) the day before the robbery, LWZ approached in his car, spoke with several individuals who were having a barbeque in the parking lot, and went inside; (2) several individuals from the barbeque entering and exiting an older silver or gray Chevrolet Impala; (3) on the day of the reported robbery, two black males, one of which matched LWZ's description of TI, search LWZ's vehicle and then return to the building; and (4) just before the reported robbery, an individual matching LWZ's description of TI looking out the front windows and talking on a cell phone in the lobby of the Huntington Place apartments. Officer Blasingame surveilled the Huntington Place apartments over several days and determined that one of the two older gray Chevrolet Impalas that was often parked around the Huntington Place apartments belonged to Heywood Jones. By looking at a Hennepin County booking photograph of Jones, Officer Blasingame determined that Jones was one of the three assailants that robbed LWZ. Eventually, officers executed a search warrant on the apartment Jones was known to be staying in and arrested Jones in the apartment. Jones admitted to being the man seen on the lobby surveillance video and identified TI as the assailant with three dreadlock braids. Jones gave TI's cell number as 612-327-8409. Officer Blasingame received information that Bailey had been arrested on March 25, 2014, and that a loaded

9mm handgun and cell phone had been found near where he had fled police. Bailey identified the cell phone as his. Officer Blasingame viewed Bailey's booking photo and recognized Bailey as the assailant with three dreadlock braids in the surveillance video. Records also showed that Bailey had called the same cell phone number—612-327-8409—several times since his arrest.

Probable cause determinations "d[o] not deal with hard certainties, but with probabilities." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Facts supporting a search warrant "must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Palega*, 556 F.3d 709, 715 (8th Cir. 2009) (quoting *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993)).

Officer Blasingame's affidavit sets forth the circumstances under which LWZ became acquainted with Bailey, the video surveillance footage corroborating LWZ's statement that two of his assailants—including Bailey—searched his car, the fact that Bailey had been known to have guns, and that Bailey had called the cell phone that had been found near where he fled from police several times since his arrest. A man matching

Bailey's description can be seen on surveillance video using his phone and looking out the front windows just before he robbed LWZ. Based on the totality of these circumstances, the Court concludes that the information in the affidavit raised a fair probability that a search of the cell phone would result in the discovery of evidence of criminal activity. Accordingly, Bailey's challenge to the April 1 warrant must fail.

### b. April 30, 2014 Warrant

Bailey also challenges the April 30, 2014 warrant, arguing that the supporting affidavit fails to establish probable cause. Officer Blasingame's affidavit in support of the April 30 warrant contained, *inter alia*, the following information: BPPD responded to a 911 call reporting an armed robbery with a gun in the third floor hallway of the Huntington Place apartments at 5833 73rd Avenue North in Brooklyn Park, Minnesota. Officers met with the robbery victim LWZ who identified one of the three assailants as "TI." During the course of the investigation, law enforcement identified Jones as a suspect in the robbery and arrested him. Jones confirmed TI's identity to be Bailey and supplied his phone number as 612-327-8409. Officer Blasingame received information that Bailey had been arrested on March 25, 2014, and that a loaded 9mm handgun and cell phone had been found near where he had fled police. Bailey identified the cell phone as his. Officer Blasingame viewed Bailey's booking photo and recognized Bailey as the assailant with three dreadlock braids in the surveillance video. Records also showed that Bailey had called the same cell phone number—612-327-8409—several times since his arrest. Law enforcement determined that the ballistics from the 9mm handgun found near Bailey's phone matched the ballistics of the weapon used in an unsolved homicide in

Minneapolis. Sprint, the service provider for Bailey's cell phone, retains records of calls, messages (both voice and text), data communications, and approximate location via cell towers accessed during mobile calls.

Officer Blasingame's affidavit sets forth Bailey's alleged involvement in an armed robbery, Bailey's association with a 9mm handgun, that handgun's believed involvement in a recent unsolved murder, and Sprint's practice of retaining its customers' data, including location data and messages.  Based on the totality of these circumstances, the Court concludes that the information in the affidavit raised a fair probability that a search of Sprint's records of Bailey's cell phone account would result in the discovery of evidence of criminal activity. Accordingly, Bailey's challenge to the April 30 warrant must also fail.

### III.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Bailey's Motion to Dismiss (ECF No. 22), Motion to Suppress Statements (ECF No. 20), and Motion to Suppress Search and Seizure (ECF No. 21) be **DENIED.**

Date:  October 27, 2014                    s/ Tony N. Leung
                                           Tony N. Leung
                                           United States Magistrate Judge
                                           District of Minnesota

                                           *United States v. Bailey*
                                           File No. 14-cr-270 (PJS/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **November 11, 2014**.